IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

MELODIE C. HOFFMAN,
      Plaintiff,

vs.                              Case No. 5:06cv46/RS/EMT

LINDA S. McMAHON,[1]
Acting Commissioner of the
Social Security Administration,
      Defendant.
_____/

## ORDER, REPORT AND RECOMMENDATION

      This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court relating to review of administrative determinations under the Social Security Act (Act) and related statutes, 42 U.S.C. § 401, *et seq*.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for disability insurance benefits (DIB) and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Act.

      Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

---

[1]Linda S. McMahon succeeded Jo Anne B. Barnhart, and is presently the Acting Commissioner of Social Security.  Therefore, she is automatically substituted as Defendant.  *See* Fed. R. Civ. P. 25(d)(1).

Case 5:06-cv-00046-RS-EMT   Document 14   Filed 02/12/07   Page 2 of 27

Page 2 of  27

## I.       PROCEDURAL HISTORY

This suit involves two applications made under the Social Security Act.  The first is an application for DIB under Title II of the Act, 42 U.S.C. §§ 401 *et seq.* (Tr. 53–61).[2]  The second is an application for SSI benefits based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq.* (Tr. 272–74, 285–86).  Plaintiff's applications were denied initially (Tr. 36, 38–41, 275, 276–79) and on reconsideration (Tr. 37, 44–46, 280–84).  On July 13, 2005, following a hearing, an administrative law judge (ALJ) rendered a decision in which she found that Plaintiff was not under a "disability" as defined in the Social Security Act (Tr. 16–29).  On December 23, 2005, after consideration of additional evidence (Tr. 8, 287–306), the Appeals Council of the Social Security Administration denied Plaintiff's request for review (Tr. 5–8).  Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to judicial review pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).  Falge v. Apfel, 150 F.3d 1320 (11th Cir. 1998).  This appeal followed.

## II.      FINDINGS OF THE ALJ

On July 13, 2005, the ALJ made several findings relative to the issues raised in this appeal (Tr. 19–29).  The ALJ found that:

1)      Plaintiff, who alleged an onset of disability on August 24, 2003, meets the non-disability requirements for a period of disability and DIB set forth in Section 216(I) of the Act and is insured for benefits through December 31, 2004.

2)      Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability.

3)      Plaintiff's depression, fibromyalgia, obesity, and lumbar degenerative disc disease are considered "severe" based on the requirements in the Regulations 20 C.F.R. §§ 404.1520(c) and 416.920(c).[3]

4)      These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P of Regulation No. 4.

---

[2] All references to "Tr." refer to the Transcript of Social Security Administration Record filed on May 12, 2006 (Doc. 6).

[3]The ALJ found that the following impairments were non-severe: Plaintiff's neck pain, headaches, high blood pressure, irritable bowel syndrome, urine incontinence, hydradenitis, and substance abuse (Tr. 21).

Case No. 5:06cv46/RS/EMT

5)      Plaintiff's allegations regarding her limitations are not totally credible.

6)      Plaintiff has the residual functional capacity (RFC) for light exertional work; additionally, she can stand, walk, or sit six hours in an eight-hour day; lift twenty pounds occasionally and ten pounds frequently, with occasional postural activities; she cannot climb ladders, ropes, or scaffolding; she must avoid concentrated exposure to hazards; and, she is limited to simple, unskilled work due to limited concentration, and work which is essentially isolated, with only occasional supervision and only occasional contact with the general public because of problems associated with her mental illness.

7)      Plaintiff is unable to perform any of her past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

8)      Plaintiff is a "younger individual between the ages of 45 and 49" (20 C.F.R. §§ 404.1563 and 416.963).

9)      Plaintiff has a "high school (or high school equivalent) education" (20 C.F.R. §§ 404.1564 and 416.964).

10)     Plaintiff has no transferable skills from any past relevant work and/or transferability of skills is not an issue (20 C.F.R. §§ 404.1568 and 416.968).

11)     Plaintiff has the RFC to perform a significant range of light work (20 C.F.R. §§ 404.1567 and 416.967).

12)     Although Plaintiff's exertional limitations do not allow her to perform the full range of light work, using Medical-Vocational Rule 202.21 as a framework for decision-making, there are a significant number of jobs in the national economy she could perform.

13)     Plaintiff was not under a "disability," as defined in the Social Security Act, at any time through July 13, 2005 (20 C.F.R. §§ 404.1520(g) and 416.920(g)).[4]

---

[4]In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims (*see* 20 C.F.R. §§ 404 and 416). Therefore, hereafter, citations in this report and recommendation should be considered to refer to the appropriate parallel provision. The same applies to citations of statutes or regulations found in quoted court decisions.

III.    STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) (stating "[t]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied"); *see also* Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987); Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991). As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge, 150 F.3d at 1322; Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). Substantial evidence is more than a scintilla, but not a preponderance, i.e., "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439. The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot,

considering  [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g), the Commissioner analyzes a disability claim in five steps.  The steps are:

1.    If the claimant is performing substantial gainful activity, she is not disabled.

2.    If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3.    If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.    If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5.    Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her RFC and vocational factors, she is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work.  20 C.F.R. § 404.1512.  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must then prove she cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.    PLAINTIFF'S PERSONAL, EMPLOYMENT AND MEDICAL HISTORY

A.    Personal History

Plaintiff was born on February 11, 1957, and was forty-eight years old in June 2005, when she had her hearing before the ALJ (Tr. 26, 307).  She has a high school equivalent education (GED) and past relevant work as a convenience store supervisor and manger, newspaper delivery person, and bookkeeper (Tr. 20, 26, 73).  She was fired from her last job, in April 1999, for "being sick" (Tr.

67).  Plaintiff is 5'8 and weighs 292 pounds (Tr. 311).  She was diagnosed with fibromyalgia in 2003 (Tr. 320).

When Plaintiff applied for benefits in May 2003, she indicated an inability to work because she occasionally loses control of her bladder and bowels, she has "advanced lumbar degenerative change with lumbar arthropathy," extreme low back pain, upper back pain, and lower stomach pain (Tr. 67, 75–76, 89).  She also stated that she cannot sit or stand for long periods, and she has continuous nausea and panic attacks (Tr. 67).  She noted that has "burning knife-like pain from [her] hips to [her] ankles," an aching and numb left arm, "severe charley horses all over her body," headaches, groin pain, and multiple cysts all over her body (Tr. 74, 89, 318).  Plaintiff described her pain as "24/7 it never stops," and it has been so intense at times she cries (Tr. 89).  To alleviate her pain, Plaintiff takes pain medication and has participated in physical therapy, but she claims that the physical therapy has actually made her pain worse and her pain medications have had "[zero] effect" (Tr. 89–90).  She also claims that a cortisone injection in her lower back provided "no results" (Tr. 108).  Additionally, Plaintiff indicated that she continues to do her own housework, such as vacuuming, dusting, and laundry, but it is getting "harder and harder" (Tr. 92).  She must perform her household chores by "pushing [her]self along in a chair with wheels so she can sit," and she cannot do anything more than "light" housework (Tr. 98).  Generally, Plaintiff prepares one meal a day, but she needs help when her hands "lock-up," and she has to sit when she is preparing a meal (Tr. 91).  She also needs to sit while showering, and she cannot do "anything other than basic bathing and dressing" (Tr. 98).  She noted that her pain interferes with her daily activities; she cooks, shops, cleans, and visits friends less, and she sleeps about half of the day in four-hour intervals (Tr. 90, 93).        At Plaintiff's hearing, in June 2005, she testified that her biggest problem was that both of her legs and feet tend to go numb (Tr. 316).  She also noted that she has had cysts "all the time" for about twenty years, which are sometimes open and draining (Tr. 326).  They are painful, especially the ones under her left arm, which sometimes prevent her from lowering her arm (*id.*).  Plaintiff indicated that she cannot sleep any longer than three hours at a time (Tr. 328).  Plaintiff stated that, it total, she is up about half the time and in bed the other half, and she testified that she basically cannot do any household chores (*see* Tr. 328, 330).  Plaintiff states that she gets along well with

people in authority, but not always with the public because she has little patience when she is in pain (Tr. 93, 100).  Plaintiff rarely drives due to poor reflexes and muscle spasms (Tr. 312).  She can walk for only ten minutes at a time; she can bend forward at the waist; she cannot kneel, squat, stoop, or climb stairs; she can stand for no more than fifteen minutes; and she can sit for at most an hour and a half (Tr. 307, 326–27).  Plaintiff can lift no more than five pounds (Tr. 327).

Plaintiff was hospitalized for eight days in 1998 for depression (Tr. 322).  However, she apparently was doing better until approximately April 2003, when "she had a return of symptoms" (Tr. 311).  She has good recent and remote memory, and can complete simple jobs and follow instructions; however, she has trouble concentrating and dealing with deadlines or schedules (Tr. 93–94).

B.     Relevant Medical Evidence (Mental)

Plaintiff was voluntarily hospitalized in May 1998 for approximately eight days for severe depression (Tr. 121, 322).  Her hospitalization coincided with the impending anniversary of her son's death (*see* Tr. 129).  Upon discharge, Plaintiff was advised to follow up for medications and therapy (Tr. 126).

Next, Plaintiff participated in individual psychotherapy sessions with Marlene East, a Licensed Mental Heath Counselor, from approximately April 24, 2003 to February 24, 2004 (Tr. 233–41).  In summarizing her treatment, Ms. East advised the Office of Disability Determination Services (DDS) that she "often observed [Plaintiff] to be tearful from physical pain combined with hopelessness over not being able to find medical care to relieve her pain and symptoms" (Tr. 234).  She also noted that Plaintiff is obese, which, combined with Plaintiff's pain, is debilitating (*id.*).  Ms. East further opined that "[t]he pain and anguish leading to frequent tearfulness significantly interfere with her being able to focus on occupational duties" and she "anticipates [a] poor prognosis for rehabilitation or improvement" (*id.*).  She believes Plaintiff is entitled to disability benefits (*see* Tr. 233).

On August 24, 2003, Plaintiff was evaluated by Clell C. Warriner, Ph.D., at the request of DDS (Tr. 163).  Plaintiff discussed her prior hospitalization, reporting that increasing medical problems and job-related stress caused a mental breakdown (*id.*).  She attempted to return to work after her breakdown, "but her diarrhea and vomiting led to her early dismissal" (*id.*).  She described

her many physical problems, including fibromyalgia, nausea, diarrhea, colon polyps, and cysts in her armpits and groin (Tr. 164).  She noted she has low back and leg pain, and she can stand for only a half an hour before pain and numbness force her to sit down (*id.*).  She stated that a physician has recommended back surgery, but she is "terrified of that prospect" because her husband had back surgery and had no improvement (*id.*).  Finally, Plaintiff indicated she was presently seeing a therapist, who "she finds helpful in maintaining some semblance [of] efficiency and sanity" (*id.*).

Dr. Warriner diagnosed Plaintiff as follows: "depressive disorder, secondary to medical condition, moderate to severe; chronic pain disorder, moderate; chronic low back pain; fibromyalgia; and, atypical large cysts in armpits and groin" (Tr. 164–65).  Plaintiff had no AXIS II psychiatric diagnosis, and she was assessed with a Global Assessment of Functioning (GAF) score of 65[5] (*id.*).  In conclusion, Dr. Warriner opined that "from a physical and psychiatric point of view, [Plaintiff] is incapable of substantial gainful employment" (Tr. 165).

A mental RFC assessment was completed at the request of DDS by Eric D. Martin, Ph.D., on October 17, 2003 (Tr. 166–69).  Dr. Martin opined that Plaintiff had no significant mental limitations or only moderate limitations, and that she would be able to "interact appropriately in general" and be capable of performing routine, repetitive tasks on a sustained basis (*id.*).

A Psychiatric Review Technique (PRT) form was completed on October 17, 2003 by a DDS psychologist (Tr. 170–83).  Plaintiff's psychiatric condition was evaluated under Listing 12.04 of 20 C.F.R. Part 404, Subpart P, Appendix 1 (Affective Disorders), Listing 12.08 (Personality Disorders), and Listing 12.09 (Substance Addiction Disorders) (Tr. 170).  The physician opined that none of Plaintiff's disorders satisfied the diagnostic criteria of the Listings (*see* Tr. 173, 177, 178).  The physician further opined that Plaintiff has, at most, only moderate limitations as a result of these mental disorders and noted that Plaintiff's activities of daily living are "limited primarily by her physical condition, per her report" (*see* Tr. 180, 182).

---

[5]Global assessment of functioning is the overall level at which an individual functions including social, occupational, academic, and other areas of personal performance.  American Psychiatric Association, <u>Diagnostic and Statistical Manual of Mental Disorders</u> 30-32 (4th ed. 1994).  It may be expressed as a numerical score. *Id.* at 32.  A score between 61 and 70 reflects some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. *Id.*

On January 5, 2004, another PRT form was completed by J. Patrick Peterson, Ph.D., a DDS consultant.  He evaluated Plaintiff's condition under Listings 12.04 and 12.09 (Tr. 205).  He, too, found that Plaintiff's disorders failed to satisfy the diagnostic criteria of the Listings (Tr. 208, 213). Dr. Peterson opined that Plaintiff had no functional limitations or only mild limitations as a result of her disorders, and he noted that Plaintiff "continues to function capably in a full range of routine [activities of daily living] within her physical . . .  parameters, including management of  . . . [her] 'disabled' spouse" (Tr. 215, 217).

Plaintiff was evaluated by John R. Billingsley, M.D., on March 2, 2005, at the request of Plaintiff's disability attorney.  Dr. Billingsley noted that his examination took two hours and that he had reviewed the "records that accompanied [Plaintiff]," but he did not identify which records Plaintiff brought, other than noting that the records mentioned Zyprexa, Zoloft, and Depakote and contained the results of Plaintiff's 2003 MRI (Tr. 259, 261).  Dr. Billingsley observed that Plaintiff appeared to be of normal intelligence; she was alert and oriented; her recent and remote memories were normal; her thought process was mildly disorganized, and she sometimes forgot where she was in the middle of a statement because she would become "overly fixated" on a particular point; and her insight and judgment were fair (Tr. 262).  Dr. Billingsley indicated that he disagreed "with the Social Security examiner" and felt that Plaintiff has a Bipolar Disorder and that her psychological conditions are so severe they are disabling (Tr. 263).  He also diagnosed Plaintiff with Post-Traumatic Stress Disorder, Chronic Pain Disorder, and a GAF of 30[6] (*id.*).  Finally, consistent with his opinion that Plaintiff was disabled, Dr. Billingsley opined that Plaintiff had "marked" or "extreme" functional limitations and that she met the specific criteria of Listings 12.04 and 12.06 (Anxiety Related Disorders) (Tr. 265–71).

---

[6]A GAF score between 21 and 30 reflects behavior that is considerably influenced by delusions or hallucinations OR serious impairment, in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day, no job, home, or friends).  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 30-32 (4th ed. 1994).  *Id.*

C.      Relevant Medical Evidence (Physical)

On March 15, 2001, Plaintiff presented to the emergency department of a hospital in South Carolina complaining of headaches (Tr. 198, 203).  She was diagnosed with hypertension and headache and discharged the same day (Tr. 199).

Plaintiff presented to the emergency department at Bay Medical Clinic on March 31, 2003, complaining of chest pain (Tr. 137).  A chest x-ray was normal, and Plaintiff was discharged four hours later and assessed with "acute chest pain" (Tr. 138–39).

Plaintiff saw W.E. Varnadore, M.D., immediately after her discharge from Bay Medical, and she continued to see him through late October of 2003 (*see* Tr. 184–97).  Plaintiff generally complained of fatigue, depression, anxiety, stress, back pain, leg pain, and hip pain (*see* Tr. 193–94, 197).  Her diagnoses included hypertension, fibromyalgia, multiple cysts, depression, and back and leg pain (*see, e.g.*, Tr. 186, 188, 196).  She was treated with medications (*see, e.g.*, Tr. 190)

An MRI was taken of Plaintiff's lumbar spine on April 10, 2003 (Tr. 153).  Dr. R. Darr McKeown's impression was: 1) no large lumbar disk herniations; 2) "L4-5, severe disk degeneration is worse within the right side with bony edema . . . The formina are narrowed bilaterally, although worse on the right where there is potentially some deformity of the right L4 nerve root"; 3) "L5-S1, mild disk degeneration with some narrowing of the left foramen due to left lateral spondylosis that might possibly affect the left L5 nerve root"; and 4) L2-3, mild degeneration with minor disk bulge (Tr. 153–54).  Another evaluation of the MRI led G.A. Presser, M.D., to conclude that Plaintiff had "moderately advanced degenerative disc disease at the L4/5 and L5/S1 level" with "loss of disc space height and sclerotic changes on both sides of the facets" and no evident "compression deformities or off set" (Tr. 152).  Dr. Presser also noted that "no spondylolysis or spondylolisthesis is seen" (*id.*).

Plaintiff was seen by Phillip Benton, M.D., on April 21, 2003 with complaints of back pain and bilateral leg pain (Tr. 147).  She reported no history of associated bowel or bladder dysfunction and no recent history of headaches (*id.*).  She stated that her back pain is aggravated by activity and generally relieved with rest (*id.*).  A physical examination revealed symmetrical deep tendon reflexes in all upper and lower extremities and normal motor strength, although Plaintiff was noted to be obese (*id.*).  A review of Plaintiff's x-ray and MRI led Dr. Benton to assess Plaintiff with "advanced

lumbar degenerative change with lumbar facet arthropathy" (Tr. 148).   He recommended that Plaintiff continue taking anti-inflammatories and begin a program of physical therapy (*id.*).

On May 6, 2003, Plaintiff was evaluated for physical therapy (Tr. 149).  She stated that she had pain almost everywhere, but mostly in her back and legs (*id.*).  After range of motion and other testing, it was decided that Plaintiff should participate in pool therapy, ultrasound stimulation for pain management, massage therapy, and home exercise (Tr. 149–50).

On May 14, 2003, J.M. Strohmenger, M.D., reviewed test results (either MRI's or x-rays — the record is unclear) and found no acute abnormalities in Plaintiff's left shoulder (Tr. 151).  Regarding Plaintiff's cervical spine, Dr. Strohmenger found as follows:  "No fracture is seen.  There is straightening of the normal curvature . . . [and] anterior and posterior spurring at C5/6 and C6/7 with narrowing of the disc spaces." (*id.*).   His impression was "degenerative change at C5/6 and C6/7" (*id.*).

Plaintiff saw Hulon E. Crayton, M.D., from July 8, 2003 through August 4, 2004 (Tr. 242–57).  When Plaintiff first saw Dr. Crayton she complained of severe leg, back, and arm pain, and she advised him that she had this pain for at least the last seventeen years (Tr. 253).  She told him that she had to quit her job because of pain; her pain is constant; activity improves her pain somewhat, but does not take it away; and she cannot sit or stand for more than ten minutes (*id.*).  Plaintiff further stated that physical therapy made her pain worse, medications have not provided any relief, and her psychiatrist has accused her of being a "junkie" (*id.*).   A physical examination revealed full range of motion of all joints with no synovitis and positive fibromyalgia trigger points (*id.*).  Dr. Crayton reviewed Plaintiff's back x-rays and noted some mild facet arthritis and mild degenerative disc disease (*id.*).  Plaintiff was assessed with fibromyalgia and referred to a rheumatologist (Tr. 248, 251).  On August 4, 2003, Dr. Crayton reviewed Plaintiff's joint x-rays and concluded that her joints were normal, stating as follows:  "Negative SI joint x-rays.  Doubt spondyloarthropathy."  (Tr. 248, 257).  In December 2003, Plaintiff was referred for a bone scan, and Dr. Crayton reviewed the results in January 2004 (Tr. 245–46).  Dr. Crayton noted that the bone scan was normal and basically negative other than a degenerative disc (Tr. 245, 256).  Plaintiff underwent trigger point injections which afforded a "significant reduction in pain" (Tr. 245).  In August 2004, Dr. Crayton noted that both Plaintiff and her husband were requesting Lortab (Tr.

242).  He provided Plaintiff with a prescription for Lortab but noted that there would be no more refills; he also made no further appointments with Plaintiff and told her that he had nothing else to offer her (*id.*).

A Physical RFC Assessment form was completed by Todd A. Patterson, D.O., in August 2003 (Tr. 155–62).  Dr. Patterson concluded that Plaintiff could occasionally[7] lift or carry (including upward pulling) twenty pounds; frequently[8] lift or carry (including upward pulling) ten pounds; and stand, walk, or sit (with normal breaks) for about six hours in an eight-hour workday.  He also found Plaintiff had the unlimited ability, subject to the above restrictions, to push or pull (including operation of hand or foot controls).  He believed Plaintiff could frequently climb ramps or stairs; occasionally stoop, kneel, crouch, or crawl; and never climb ladders, ropes, or scaffolds (Tr. 157).  She had no manipulative limitations (that is, she could reach, handle, finger, or feel), nor any visual, communicative or environmental limitations, except that she should limit concentrated exposure to hazards, such as machinery or heights (Tr. 158–59).

Plaintiff was evaluated on January 21, 2004, by Osama Elshazly, M.D., at the request of DDS (Tr. 219).  Essentially, Plaintiff complained of pain everywhere, fatigue, arthritis, fluctuating blood pressure, and "constipation alternating with diarrhea" (*id.*).  Plaintiff also noted that she has had trouble holding her bladder, as well as urinary incontinence, sleeplessness, and headaches (*id.*).  A physical examination revealed some trigger point tenderness, indicative of fibromyalgia; normal motor function in all four extremities, with strength judged at 5/5 throughout; normal manual dexterity; good coordination; normal sensation; normal standing balance; normal gait, including heel and toe walk; and an inability to squat and rise due to her weight (Tr. 221).  Plaintiff had full range of motion of her cervical and lumbar spine, shoulders, elbows, writs, hands, hips, knees, ankles, and toes (Tr. 222–24).  Dr. Elshazly's impression was fibromyalgia; chronic fatigue; chronic joint pain; urinary incontinence, "as [Plaintiff] stated"; and hypertension.  Dr. Elshazly summarized his findings as follows:  "[T]he claimant has several medical problems.  Otherwise, she is able to comprehend and follow directions.  She is able to speak and hear in a normal fashion."  (Tr. 221).

---

[7]"Occasionally" means occurring from very little up to 1/3rd of an 8-hour workday (cumulative, not continuous).

[8]"Frequently" means occurring 1/3rd to 2/3rds of an 8-hour workday (cumulative, not continuous).

In February 2004, another physical RFC assessment form was completed by a DDS physician (Tr. 225–32)  The physician concluded that Plaintiff could occasionally lift or carry twenty pounds; frequently lift or carry ten pounds; and stand, walk, or sit for about six hours in an eight-hour workday (Tr. 226).  He also found that Plaintiff had the unlimited ability, subject to the above restrictions, to push or pull (*id.*).  He believed Plaintiff could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl, but she could never climb ladders, ropes, or scaffolds (Tr. 227).  Plaintiff had no manipulative, visual, communicative or environmental limitations (Tr. 228–29).

On October 3, 2005, Plaintiff was referred by her disability attorney for an evaluation by W.R. McArthur, M.D., an orthopaedic surgeon (Tr. 291).  Dr. McArthur indicated that in addition to examining Plaintiff, he reviewed the following documents: office notes from Dr. Lentz, Dermatology Associates, Dr. Benton, and Dr. Crayton; psychological reports from Dr. Warriner and Dr. Billingsley; and an x-ray of Plaintiff's cervical spine from May 2003 (*id.*).  Plaintiff reported chronic back pain and agonizing pain over most of her body (*id.*).  Dr. McArthur noted that she had diffuse trigger points over her upper back.  Range of motion testing was normal in Plaintiff's shoulders and hips, but she had some limited range of motion in her neck and lumbar spine (Tr. 292).  Plaintiff experienced pain in her low back when she moved her legs during straight leg raising tests, but she was able to walk on her heels and toes, and her neurological examination revealed normal active deep tendon reflexes throughout (Tr. 292–93).  Dr. McArthur diagnosed Plaintiff with chronic diffuse fibromyalgia, cervical degenerative disc disease, lumbar disc disease, depressive disorder, and morbid obesity (Tr. 293).  He opined that Plaintiff was not capable of gainful employment, and she had a poor prognosis for successful treatment — "practically zero" (*id.*).  Consistent with his opinion that Plaintiff was disabled, Dr. McArthur opined that her pain was virtually incapacitating, physical activities would greatly increase her pain to such a degree as to cause distraction from or total abandonment of task, pain would interfere with her ability to pay attention, and Plaintiff would need to lie down during the day to alleviate her pain (Tr. 296–97).  Dr. McArthur further noted that Plaintiff could sit, in three-hour intervals, for six hours in an eight-hour workday; stand, in a two-hour interval, for a total of two hours; walk, in a one-hour interval, for a total of one hour; and occasionally lift up to five pounds (Tr. 298).  Finally, Dr. McArthur opined

that Plaintiff suffered from some environmental limitations, and she could never stoop, bend, squat, crawl, or climb; she was able to use her hands repetitively, and she could occasionally reach, but she could not use her feet or legs repetitively (Tr. 299).

D.    Other Information Within Plaintiff's Claim File

A vocational expert (VE) testified at Plaintiff's hearing before the ALJ.  The VE opined that Plaintiff could perform the job of rental clerk, security agent, or garment folder, and that those jobs were available in the national and regional economies (Tr. 337).  However, if Plaintiff had the limitations set forth in Exhibit 18F (that is, the records of John R. Billingsley (*see* Tr. 3, 337)), she could not perform those jobs (or, presumably, any other work) (Tr. 337).

V.   DISCUSSION

Plaintiff raises four issues on appeal (Doc. 10 at 1).  Plaintiff contends the Appeals Council abused its discretion in failing to remand Plaintiff's case for new evidence, and the ALJ erred in her consideration of Plaintiff's fibromyalgia, lumbar spine condition, and the opinions of Doctors Warriner and Billingsley (*id.*).

A.    Appeals Council's Failure to Remand

After the decision of the ALJ, Plaintiff requested review by the Appeals Council and submitted new evidence[9] for its consideration. The Appeals Council denied Plaintiff's request for review.[10]  Plaintiff contends the Appeals Council erred in failing to remand her case based on the new evidence, and as relief, Plaintiff seeks remand to the Commissioner for further consideration of the evidence presented to the Appeals Council (Doc. 10 at 22).

Courts are permitted to remand a case to the Social Security Administration for consideration of newly discovered evidence.  42 U.S.C. § 405(g).  However, to succeed on a claim that remand is appropriate, Plaintiff must show that (1) new, noncumulative evidence exists, (2) the evidence is material such that a reasonable possibility exists that the new evidence would change the

---

[9]New evidence is specifically permitted to be provided to the Appeals Council if the evidence is both new and material.  *See* 20 C.F.R. § 404.970(b).  This new evidence is then evaluated by the Appeals Council to determine whether a basis exists for changing the ALJ's decision.

[10]The Appeals Council may decline to review denials of benefits by ALJs.  *See* 20 C.F.R. § 404.967 ("The Appeals Council may deny or dismiss the request for review, or it may grant the request and either issue a decision or remand the case to an administrative law judge.").

administrative result, and (3) good cause exists for the failure to submit the evidence at the appropriate administrative level.  *See* Falge, 150 F.3d at 1323; *see also* Cannon v. Bowen, 858 F.2d 1541, 1546 (11th Cir. 1988) (quoting Caluder v. Bowen, 791 F.2d 872, 877 (11th Cir. 1986)); Keeton v. Department of Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994) (court may remand to Secretary if new evidence is material and good cause exists for failure to incorporate the evidence in the record during proceedings before the ALJ).

Here, the 'new evidence' submitted by Plaintiff to the Appeals Council consists entirely of Dr. McArthur's report, which is based on his examination of Plaintiff approximately three months after the ALJ's decision (the decision was rendered on July 13, 2005; Dr. McArthur examined Plaintiff on October 3, 2005).  This court concludes that the new evidence fails to satisfy the second and third requirements for remand.

First, Dr. McArthur's opinion was based upon his review of the same reports that were considered by the ALJ.  Aside from the one-time post hoc examination of Plaintiff and Dr. McArthur's conclusions, there is nothing new for the ALJ to consider.  Moreover, evidence of Plaintiff's condition after the ALJ's decision is not necessarily relevant to her functional abilities during the relevant time period.  *See* Szubak v. Secretary of Health & Human Servs., 745 F.2d 831, 833 (3d Cir. 1984) ("An implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition.").  Here, Dr. McArthur examined Plaintiff on October 2005, but she was last insured for DIB on December 31, 2004, and Dr. McArthur's opinion does not specifically relate back to the relevant period under adjudication. *See* Gallina v. Commissioner of Social Sec., No. 06-12431, 2006 WL 3028228, at *2 (11th Cir. October 25, 2006)[11] (tests conducted several months after the ALJ's decision were reflective of claimant's worsened condition, rather than the extent of her disability prior to the decision). Moreover, as one-time consultative examiner, Dr. McArthur's opinions are not entitled to deference, *see* McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)), and it is likely that the ALJ would have rejected Dr. McArthur's opinions as

---

[11]Unpublished decisions of this court are not binding precedent.  *See* 11th Cir. R. 36–2.

inconsistent with the record as a whole.  Thus, there is no reasonable possibility that Dr. McArthur's report or opinion would have changed the administrative result.

Second, Plaintiff has failed to show good cause for failing to submit the evidence at the administrative level.  Although the evidence did not exist prior to the ALJ's decision, the evidence clearly could have existed earlier.  The evidence at issue is a consultative physical examination performed at the request of Plaintiff's attorney, who has represented Plaintiff since July 10, 2003 (see Tr. 35).  Therefore, Plaintiff's attorney had two years in which he could have obtained a consultative examination and submitted it for consideration before the record closed.  Indeed, Plaintiff was able to obtain a consultative psychological evaluation by Dr. Billingsley and submit his report in a timely manner.  Even if the need for further evaluation of Plaintiff's physical condition did not become evident until after the administrative hearing, Plaintiff could have requested that the record be held open for sufficient time to obtain such an examination.  The good cause requirement was designed to avoid the danger of "encouraging claimants to seek after-acquired evidence, and then use such evidence as an unsanctioned 'backdoor' means of appeal."  Milano v. Bowen, 809 F.2d 763, 767 (11th Cir. 1987) (quoting Szubak, 745 F.2d at 834).  Thus, Plaintiff has failed to establish "good cause," as contemplated by the Act, for failing to timely submit the evidence at issue.

Accordingly, Plaintiff has failed to establish entitlement to a remand based upon the new evidence submitted to the Appeals Council.[12]

B.      Fibromyalgia

The ALJ found that Plaintiff's fibromyalgia was a severe impairment, but it did not render her disabled (see Tr. 21).  Plaintiff contends that the ALJ "improperly minimized [Plaintiff's] pain and fatigue caused by her fibromyalgia condition and erred in relying on the alleged lack of objective evidence as a basis for assessing the severity of her fibromyalgia condition" (Doc. 10 at 10).

---

[12]In further considering the instant appeal, this court will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence.  See Falge, 150 F.3d at 1323.  In other words, Dr. McArthur's report will not be taken into consideration.

The diagnosis of fibromyalgia is difficult because the disease often lacks medical or laboratory signs and is generally diagnosed mostly on an individual's described symptoms.  Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  Thus, the Seventh Circuit has held that requiring positive laboratory findings is error in cases of this nature.  Sarchet v. Chater, 78 F.3d 305 (7th Cir. 1996) (ALJ erred in finding claimant non-disabled because of lack of positive laboratory tests) (cited approvingly in Stewart v. Apfel, 245 F.3d 793 (11th Cir. 2001) (table), 2000 U.S. App. LEXIS 33214 (unpublished opinion)).  In Stewart, the court reviewed medical research on fibromyalgia, noting that it often lacks medical or laboratory signs, is generally diagnosed mostly on an individual's described symptoms, and its hallmark is a lack of objective evidence.  Thus, the ALJ's determination that a fibromyalgia claimant's testimony was incredible, based on the lack of objective evidence documenting the impairment, was reversed.  Stewart, 245 F.3d at 793, 2000 U.S. App. LEXIS 33214, at *9, n.4.  See also Moore, 405 F.3d at 1211 (reiterating the impropriety of focusing on the absence of objective findings corroborating claims of the impairment).

Other Circuits that have considered the issue have found that fibromyalgia is a disease that can serve as the basis for a medically determinable impairment, even without positive laboratory findings.  See, e.g., Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998) ("Fibromyalgia, which is pain in the fibrous connective tissue components of muscles, tendons, ligaments, and other white connective tissues, can be disabling."); Preston v. Secretary of Health & Human Servs., 854 F.2d 815, 817–18 (6th Cir. 1988) ("Fibrositis [now fibromyalgia] causes severe musculoskeletal pain which is accompanied by stiffness and fatigue due to sleep disturbances," and diagnosis involves testing for focal tender points.)  Indeed, the Commissioner has instructed that in cases of chronic fatigue syndrome, a condition that, like fibromyalgia, is based largely on self-reported symptoms, "[p]ersistent, reproducible muscle tenderness on repeated examinations, including the presence of positive tender points" is an example of a medical sign that establishes the existence of a medically determinable impairment.  Social Security Ruling 99-2p, 1999 WL 271569 (1999).

In the instant case, Plaintiff alleges that the ALJ "failed to understand the nature of fibromyalgia" and relied on the lack of objective evidence as a basis for discrediting Plaintiff's allegations of fatigue and pain (Doc. 10 at 10–11).  Contrary to Plaintiff's assertion, however, the ALJ did not rely on a lack of objective evidence in analyzing Plaintiff's fibromyalgia.  Indeed, the

ALJ specifically noted that Plaintiff had positive trigger points, which are indicative of fibromyalgia, and then determined that Plaintiff's fibromyalgia was a severe impairment (Tr. 21–22).  The ALJ noted that fibromyalgia is not a specifically listed impairment, but she considered the pain from Plaintiff's fibromyalgia in her analysis of Plaintiff's musculoskeletal impairments under Listing 1.04 (*id.*).  Ultimately, the ALJ concluded that Plaintiff's fibromyalgia, when considered alone or in conjunction with Plaintiff's other impairments, was not disabling.

Although the ALJ specifically noted that she considered Plaintiff's complaints of fibromyalgic pain (Tr. 21), Plaintiff argues the ALJ erred in her analysis of Plaintiff's complaints because she failed to "even mention" the Eleventh Circuit's pain standard (Doc. 10 at 15).

Pain is treated by the Regulations as a symptom of disability.  Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms."  *Accord* 20 C.F.R. § 416.929.  In Hand v. Heckler, 761 F.2d 1545, 1549 (11th Cir. 1986), the Eleventh Circuit adopted the following additional pain standard:

> There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

The Eleventh Circuit continues to follow the Hand test.  Wilson v. Barnhart, 284 F.3d 1219 (11th Cir. 2002); Kelley v. Apfel, 173 F.3d 814 (11th Cir. 1999); Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991); Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991); Martin v. Railroad Retirement Bd., 935 F.2d 230, 233 (11th Cir. 1991).

The Eleventh Circuit has also approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard."  Wilson, *supra*, 284 F.3d at 1226.  Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

But "[w]hile both the Regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective

proof of the pain itself." Elam, 921 F.2d at 1216. The court has held that "[p]ain alone can be disabling, even when its existence is unsupported by objective evidence." Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (citing Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987)). However, the absence of evidence to support symptoms of the severity claimed is a factor that can be considered. *Id.*; Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).

Finally, "[I]f the Commissioner refuses to credit [subjective testimony of the plaintiff concerning pain] he must do so explicitly and give reasons for that decision. . . . Where he fails to do so we hold as a matter of law that he has accepted that testimony as true." MacGregor v. Bowen, 786 F.2d at 1054; Holt v. Sullivan, 921 F.2d at 1223. "Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court. The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [plaintiff's] medical condition as a whole." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal quotations and citations omitted). The reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence. Jones v. Department of Health and Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991).

Underlying the Hand standard is the need for a credibility determination concerning a plaintiff's complaints of pain. Those complaints are, after all, subjective. "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain." Scharlow v. Schweiker, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints").[13] People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others. "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain. This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ." Hand, *supra,* at 1548-49. It is within the ALJ's "realm of judging" to determine that "the quantum of pain

---

[13]Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit. Bonner v. Pritchard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

[a claimant] allege[s] [is] not credible when considered in the light of other evidence." Arnold v. Heckler, 732 F.2d 881, 884 (11th Cir. 1984). Thus, a physician may be told by a patient that he or she is in pain, and the physician may believe it, but the ALJ is not bound by that. The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief, is the basis for the ALJ's credibility determination.

Here, although the ALJ did not specifically mention the Eleventh Circuit's pain standard, the ALJ specifically stated that she was considering all of Plaintiff's symptoms, including pain, based on the requirements set forth in 20 C.F.R. § 404.1529 (Tr. 23). Because the ALJ cited the appropriate regulation, she was not required to 'even mention' the Eleventh Circuit's pain standard.

Thus, the court will consider whether the ALJ properly determined that Plaintiff's allegations of disabling pain and limitations were not totally credible. The ALJ noted, despite Plaintiff's complaints of right shoulder and neck pain, x-rays of her shoulder and cervical spine were normal with only some degenerative changes (Tr. 24, 151, 257). Plaintiff cites treatment notes from Hulon E. Crayton as evidence of the severity of her pain; however, the statements in Plaintiff's brief (e.g., she felt like knives were stabbing her knees, her pain made her want to die) are her own that she made to Dr. Crayton (Tr. 246, 253; Doc. 10 at 12). Plaintiff's citation to her own statements is of little probative value in proving that her condition is as limiting as she alleged, because a claimant's testimony is not self-proving. What is probative is Dr. Crayton's physical examination, in which he found a full range of motion in all joints with no synovitis, only mild facet arthritis and some mild degenerative disc disease, and no edema (Tr. 253). Dr. Crayton also indicated that Plaintiff did not require surgery and recommended only medication and massage (Tr. 251, 253). Indeed, at one point, Dr. Crayton characterized Plaintiff's impairment as only "probable fibromyalgia," although he later made the following assessment: "FIBROMYALGIA. Negative SI joint x-rays. Doubt spondyloarthropathy." (Tr. 248–49). Dr. Clayton also noted that when one of Plaintiff's trigger points was injected, she experienced a "significant reduction in pain" (Tr. 245). "A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling." Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988) (citation omitted). Ultimately, Dr. Clayton denied Plaintiff any further refills of Lortab, despite her request for such,

and he discontinued treating Plaintiff. His refusal to prescribe additional Lortab suggests he did not believe Plaintiff needed it to control her pain.

Plaintiff also alleges that letters written on her behalf by Marlene East undermine the ALJ's decision (Doc. 10 at 13). It is clear, however, that Ms. East was advocating for Plaintiff and not providing any type of objective analysis (*see* Tr. 233–36). Additionally, Ms. East is a mental health counselor, not a physician; therefore, her assessment of Plaintiff's physical condition is of little probative value. The ALJ specifically noted that although Ms. East saw Plaintiff for nineteen mental health counseling sessions, her letters focused on Plaintiff's physical condition (Tr. 23). Moreover, the court notes that the file does not contain any treatment notes from Ms. East, only letters advocating disability on Plaintiff's behalf. Nothing in Ms. East's letters undermines the substantial evidence supporting the ALJ's decision.

The ALJ also considered the observations of Dr. Elshazly during his consultative examination of Plaintiff in January 2004 (Tr. 22). Specifically, the ALJ noted that despite the presence of positive trigger points, Plaintiff's motor function was grossly normal in all four extremities, she had good coordination, 5/5 strength, normal grip, normal manual dexterity, normal standing balance, normal gait, and normal heel and toe walk (*id.*).

The ALJ further noted that Plaintiff's "physical examination was essentially normal," and her "physical complaints were treated conservatively with physical therapy and medication" (Tr. 24). In support, the ALJ referenced Exhibits 4F and 5F, which are the report of Dr. Benton and the results of Plaintiff's physical therapy evaluation (*see* Tr. 2, 24). Indeed, Dr. Benton's examination revealed symmetrical deep tendon reflexes in all upper and lower extremities and normal motor strength, and he recommended that Plaintiff take anti-inflammatories and participate in physical therapy. Additionally, the physical therapist recommended pool therapy, ultrasound stimulation for pain management, massage therapy, and home exercise. An ALJ may properly consider treatment that is "entirely conservative in nature" in discrediting a claimant's testimony. Wolfe v. Chater, 86 F.3d 1072, 1078 (11th Cir. 1996).

Finally, the ALJ considered Plaintiff's daily activities in assessing her credibility (Tr. 25). Although if accepted as true, Plaintiff's descriptions of her daily activities show some limitations, the ALJ is not required to believe all of a claimant's assertions concerning her activities. *See*

Johnson v. Chater, 87 F.3d 1015, 1018 (8th Cir. 1996).  Additionally, as the ALJ correctly noted, Plaintiff was able to drive, care for her personal hygiene, and occasionally cook (Tr. 25, 320, 328, 330).  Plaintiff also admitted that she occasionally did laundry, cleaned the bathroom sink and toilet, shopped for groceries, and did simple errands (Tr. 25, 328, 330).  The ALJ may properly consider such daily activities when evaluating subjective complaints of disabling pain and other symptoms.  *See* Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987); 20 C.F.R. § 404.1529(c)(3)(I).  *See also* Wolfe, 86 F.3d at 1078 (daily activities and conservative medical treatment support ALJ's decision to discredit testimony regarding nonexertional impairments).  The fact that it may take Plaintiff longer to complete tasks than before, or that working may cause pain or discomfort, does not warrant a finding of disability.  *See, e.g.,* Cruse v. Bowen, 867 F.2d 1183, 1186 (8th Cir. 1989).

The ALJ specifically addressed Plaintiff's complaints and gave specific reasons why she determined that Plaintiff's subjective complaints were not credible (Tr. 22–26).  Because the ALJ articulated inconsistencies which she believed discredited Plaintiff's testimony, and because her findings are supported by substantial evidence on the record as a whole, the ALJ properly discounted Plaintiff's subjective complaints concerning her allegedly disabling limitations.  *See* Foote, 67 F.3d at 1560.

As noted by the Seventh Circuit, "[s]ome people may have such a severe case of fibromyalgia as to be totally disabled from working, Michael Doherty & Adrian Jones, 'Fibromyalgia Syndrome (ABC of Rheumatology),' 310 British Med.J. 386 (1995); Preston v. Secretary of Health & Human Servs., 854 F.2d 815, 818 (6th Cir. 1988) (per curiam), but most do not and the question is whether [Plaintiff] is one of the minority."  Sarchet, 78 F.3d at 307 (emphasis added).  In the instant case, the record supports the ALJ's conclusion that Plaintiff is not one of the minority, and her fibromyalgia is not disabling.

C.      Lumbar Spine Condition

Plaintiff alleges the ALJ "improperly minimized [Plaintiff's] lumbar spine condition" because she mischaracterized the April 2003 lumbar spine MRI findings (Doc. 10 at 16).  Plaintiff's MRI was reviewed by two different physicians, and their conclusions are detailed, *supra*.  In pertinent part, Dr. McKeown found severe disk degeneration at L4-5, mild disk degeneration at L5-S1 with some narrowing of the left foramen due to left lateral spondylosis, and mild degeneration

and <u>minor</u> disk bulge at L2-3 (Tr. 153–54).  Dr. Presser found <u>moderately advanced</u> degenerative disc disease at L4-5 and L5-S1, but no spondylolysis or spondylolisthesis (Tr. 152).[14]  In reviewing these findings, the ALJ stated that "diagnostic imaging . . . shows advanced lumbar degenerative change with lumbar facet arthopathy and degenerative cervical change, but no scoliosis, spondylolysis or spondylolisthesis, and no disc herniation" (Tr. 22).  The ALJ additionally stated that the "MRI of April 10, 2003 indicated only mild disc degeneration" (*id.*).  Plaintiff contends that ALJ erred in "simply indicating" that Plaintiff had "only 'mild degeneration'" and in failing to discuss the actual MRI findings "that more than corroborate [Plaintiff's] symptoms" (Doc. 10 at 10).

Misstatements by an ALJ can constitute harmless error.  *See* <u>Diorio v. Heckler</u>, 721 F.2d 726, 728 (11th Cir. 1983) (misstatements harmless where ALJ applied correct legal standard despite the first misstatement, and the second misstatement was irrelevant);  *see also* <u>East v. Barnhart</u>, 197 Fed. Appx. 899,  901 n.3 (11th Cir. 2006) (failure to mention psychologist's report harmless where findings in report were consistent with ALJ's ultimate determination); <u>Pichette v. Barnhart</u>, 185 Fed. Appx. 855, 856 (11th Cir. 2006) (ALJ's erroneous statements found to be harmless where ALJ applied proper legal standard).

Here, Plaintiff insists that the ALJ's error was not harmless, and further, that her entire analysis of Plaintiff's lumbar spine condition was flawed because of one misstatement she made regarding the severity of Plaintiff's disc degeneration.  However, Plaintiff fails to acknowledge that: 1) two different physicians reviewed the same MRI's and reached similar, but differing opinions in describing Plaintiff's condition (that is, their descriptions included the words: severe, mild, minor, and moderately advanced), and 2) just prior to the ALJ's misstatement, she acknowledged Plaintiff's 'advanced lumbar degenerative change' with lumbar facet arthopathy and degenerative cervical change.  Thus, Plaintiff is incorrect in her assertion that the ALJ's entire description of Plaintiff's lumbar spine condition was a simple indication that Plaintiff had only mild degeneration.  Moreover, when the ALJ's misstatement is read in context, it is clear that she correctly considered the record as a whole, and recognized the advanced nature of Plaintiff's disc degeneration.  Thus, this court concludes that the ALJ's misstatement was harmless because it had no effect on her ultimate

---

[14]Additionally, Dr. Crayton reviewed x-rays of Plaintiff's back and noted <u>mild</u> disc degeneration (*see* Tr. 253).

determination that, although Plaintiff's lumbar degenerative disc disease is a severe impairment, it is not disabling.

       D.      Opinions of Dr. Warriner and Dr. Billinglsey

          (1)     Dr. Warriner

Plaintiff contends the ALJ erred by misstating Dr. Warriner's opinion that Plaintiff was unemployable due to her physical and mental condition (Doc. 10 at 18).

Dr. Warriner conducted a psychological evaluation of Plaintiff at the request of DDS. He concluded that, although Plaintiff had no AXIS II psychiatric diagnosis, she was incapable of working "from a physical and psychiatric point of view" (Tr. 165). In analyzing the results of his examination, the ALJ noted Dr. Warriner's belief that Plaintiff suffered from "moderate to severe depressive disorder secondary to her medical condition and moderate pain disorder, but no psychiatric diagnosis" (Tr. 22). Plaintiff contends that the ALJ misstated the results of Dr. Warriner's examination because depressive disorders and pain disorders are indeed psychiatric disorders, so the ALJ must not have believed that Plaintiff "suffered from ANY psychiatric disorder" (Doc. 10 at 19). Plaintiff's argument is semantical and unconvincing. The ALJ clearly acknowledged Dr. Warriner's AXIS I diagnosis, depressive disorder and pain disorder; and she noted, verbatim, his AXIS II diagnosis, "No psychiatric diagnosis." Thus, the ALJ did not misstate Dr. Warriner's findings.

Plaintiff additionally argues, however, that the ALJ erred in failing to address Dr. Warriner's opinion that Plaintiff was incapable of working. Plaintiff is mistaken. The ALJ specifically acknowledged Dr. Warriner's opinion that Plaintiff is "incapable of substantial employment" (Tr. 24). The ALJ additionally noted that Dr. Warriner assessed a GAF of 65. Although not explicitly stated by the ALJ, it is clear that she discounted Dr. Warriner's opinion that Plaintiff could not work as being inconsistent with a GAF of 65 (*see* Tr. 24). Moreover, the ALJ noted that another DDS physician found an "essentially adequate mental status" (Tr. 24). Indeed, Dr. Martin found that Plaintiff at times had a tearful affect, but her mental status was otherwise adequate (Tr. 182). Furthermore, the ALJ correctly noted that Plaintiff had no mental health treatment between her hospitalization in 1998 and her counseling that began in April 2003, and that, although Plaintiff had nineteen counseling sessions with Ms. East, her letters advocating disability on Plaintiff's behalf

focused almost exclusively on Plaintiff's physical condition, not her mental condition (Tr. 22–23). Thus, the ALJ indeed acknowledged Dr. Warriner's opinion, but she discounted it on the basis of reasons with substantial support in the record.

Moreover, the court notes that Dr. Warriner's opinion was based on the combination of Plaintiff's physical and mental impairments, but Dr. Warriner is not a physician, so his evaluation of Plaintiff's physical condition is beyond his area of expertise.  Even so, had Dr. Warriner limited his opinion on the basis Plaintiff's mental condition only, his opinion that Plaintiff is "unable to work" is not dispositive.  The Commissioner's regulations and the interpretations of those regulations clearly provide that an ALJ should give weight to a physician's opinions concerning the nature and severity of a claimant's impairments, but that the ultimate question of whether there is disability or inability to work is reserved to the Commissioner.  *See* 20 C.F.R. § 404.1527(e)(1) (stating that a finding of disability or inability to work by a medical source does not mean that the Commissioner will automatically reach the same conclusion).  Therefore, the ALJ did not err in discounting Dr. Warriner's opinion.

(2)    Dr. Billingsley

Finally, Plaintiff contends that the ALJ improperly discounted the opinion of Dr. Billingsley, a one-time consultative examiner, regarding her functional mental abilities, which he assessed as being "marked[ly]" or "extreme[ly]" limited (Doc. 10 at 20–21; *see also* Tr. 265).  However, it is clear from the ALJ's decision that she considered Dr. Billingsley's report, but properly discounted the probative value of that report because it was inconsistent with the record as a whole (*see* Tr. 24). Initially, Dr. Billingsley was not a treating physician—he was merely a consultant hired by Plaintiff's attorney, as he emphasized in his report (Tr. 259, 264).  As a consulting source, Dr. Billingsley's opinions were not entitled to any enhanced weight in the disability determination.  *See* 20 C.F.R. § 404.1527.  Additionally, as the ALJ correctly noted, Dr. Billingsley's opinion was based primarily on Plaintiff's subjective reports of her condition (Tr. 22; *see also* Tr. 259–64).  The ALJ noted that Dr. Billingsley failed to "describe how [Plaintiff] would be precluded from performing simple, unskilled work due to limited concentration, and work which is essentially isolated with only occasional supervision and only occasional contact with the general public because of problems associated with her mental illness" (Tr. 23).  Moreover, the ALJ noted that Dr. Billingsley's

assessment of Plaintiff's mental functioning was inconsistent with Plaintiff's activities of daily living and the fact that Plaintiff had not sought psychiatric treatment in over two years (Tr. 24). Plaintiff states in her brief that she was being treated by twelve doctors (Doc. 10 at 20).  However, there is no evidence in the record of Plaintiff receiving any psychiatric treatment after October 14, 2003, her last counseling session with Ms. East (*see* Tr. 234), and certainly no evidence that she was being treated by twelve doctors.  Finally, the ALJ noted that Dr. Billingsley's GAF assessment is inconsistent with the other disability reports in the record, as well as Plaintiff's ability to perform daily activities (Tr. 24).  In light of the inconsistencies identified by the ALJ, she committed no error in discounting Dr. Billingsley's opinion.

For the foregoing reasons, the Commissioner's decision is supported by substantial evidence and should not be disturbed.  42 U.S.C. § 405(g); Lewis, 125 F. 3d at 1439; Foote, 67 F.3d at1560. Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making her findings, or that any other ground for reversal exists.

Based upon the foregoing, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that Linda S. McMahon is substituted for Jo Anne B. Barnhart as Defendant.

And it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**, that this action be **DISMISSED,** and that the clerk be directed to close the file.

At Pensacola, Florida this 12th day of February 2007.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**



## NOTICE TO THE PARTIES

**Any objections to these proposed recommendations must be filed within ten days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**